JOSEPH D. BARDO

*v.*

ELIZABETH BARDO.

[Decided September 30th, 1920.]

1. A gift of personal property from a husband to a wife must be clearly proved. There must be clear and convincing evidence of a delivery of the property with the intention of divesting himself of all dominion and control of it, and of vesting it in his wife.

2. Where such clear and convincing evidence is not produced, the husband may have an accounting from his wife as to his personal property taken by her and sold to a third party.

On bill, &c.

*Mr. Elmer Demarest,* for the complainant.

*Mr. Frank G. Turner,* for the defendant.

LEWIS, V. C.

The bill in this case is filed for an accounting.

The controversy arises over money derived from the sale of a dry goods and notion store in Bayonne, the ownership of the fund being claimed by each of the parties who in this cause are husband and wife.

The fund, or what remains of it, is in the custody of the defendant.

The parties have had other litigation before me which unfolds a long chapter of matrimonial discord. They have been married since 1889 and have had four daughters. Almost from the time of their marriage they disagreed. The testimony shows that at the time of the hearing, they had not spoken to each other, except on very few occasions, since 1914, although they were living in the same house and occupying the same bed. The necessary communications were carried on through the children.

The complainant is a man advanced in years, and has been employed for a long period as an electrical superintendent by the Tide Water Oil Company of Bayonne.

The proposition confronting him in his home is a rather difficult one. His wife refuses to talk to him, and the daughters apparently sympathize with her in her attitude towards their father.

I am unable to find that during the entire married life of these people that there has been any income of importance coming to the home, except that derived from the father's exertions and the store he purchased, in which they all labored. This store he secured in 1908 from one Clark and wife. It was located at 745 Broadway, Bayonne. He paid for it $750—$600 in cash and the balance by note. The bill of sale is in the complainant's name, and he borrowed $500 of the purchase price from one Conklin, for which notes were given and subsequently paid by the complainant. This somewhat negatives the defendant's claim of ownership, and these facts are admitted by her. During the day, the defendant and her two eldest daughters attended the store, and during the evening the complainant worked there, waiting on the customers and keeping the books. This continued until May, 1917, when the defendant decided, without the knowledge of the complainant, to close the store at six o'clock and place a new lock on the door.

The complainant borrowed upon his life insurance and invested it in the business, advancing money saved from his salary, to a considerable extent, for the purpose of increasing the stock. The daughters employed at the store received salaries and their clothing. The complainant contributed $60 per month to run the house, and the profits from the store were used to supply the balance required. He also provided the house in which the family lived.

My view of the testimony is, that the complainant evidently told the truth on the stand when he said that he purchased the store so that in case anything should happen to him, his wife and children would surely have some source of income.

There is no convincing evidence from the lips of the mother or daughter who testified that Bardo ever gave his wife the store.

He says positively that it was never turned over to her; that she was simply to manage it.

It is difficult to understand why it was necessary for Mrs. Bardo, in May, 1918, if she owned the store absolutely, to secretly make sale of the business and attempt to conceal the funds. She closed the business and sold the stock at this time entirely without the knowledge of the complainant. She says she received in the neighborhood of three thousand and odd dollars, and that after the payment of the debts there was about $1,100.

The complainant, after the sale had taken place, upon learning of it, inquired what price the store had been sold for and what the debts were, but all information was refused him. He then said he would stop his contributions of support to his family and that there must be an accounting from the business. Mrs. Bardo then instituted a suit for maintenance against the complainant, and, after hearing, I dismissed the bill for lack of jurisdiction. It appeared from the evidence that the husband had in the meantime continued to contribute to the support of his wife and their infant daughter, and I felt satisfied from the evidence at that time that the fund representing the proceeds of the sale of the store belonged to the complainant.

The defendant does not claim to have held any title to the store, or to be now entitled to it by reason of any contract with the complainant. She claims that certain conversations between him and her daughter operated as a gift.

In *Farrow* v. *Farrow (Court of Errors and Appeals), 72 N. J. Eq. 421,* Mr. Justice Trenchard, speaking for the court, says: "A gift of personal property from husband to wife must be clearly proved. There must be clear and convincing evidence of a delivery of the property with the intention of divesting himself of all dominion and control of it and of vesting title in the wife." The evidence of the wife and the witnesses does not meet these requirements.

I think the complainant is entitled to relief, and I shall refer the matter to a special master to state an account between the parties.